SAM SAFIAN, Plaintiff, *v.* IRVING NATIONAL BANK, Defendant.

(Municipal Court of the City of New York, Borough of Manhattan, Second District, May, 1921.)

Banks and banking — '' cable transfer '' — contracts — plaintiff entitled to judgment for amount paid for cable transfer.

> The term " cable transfer " precludes the idea that an actual transfer of money is contemplated or intended by the parties thereto. (P. 388.)
> The seller of a " cable transfer " is in the position of having sold at an agreed price a credit for a sum of money payable at the place indicated in the written memorandum and the buyer has purchased a credit for such sum available at the place and for the payee named. (Id.)
> While money paid for a " cable transfer " becomes the money of the seller, it is still under obligation to the buyer to pay to the payee named in the " cable transfer," the agreed equivalent in foreign exchange of the amount received for such transfer. (Pp. 388, 389.)
> Where in an action to recover the amount paid to defendant for a " cable transfer " of 7,000 marks to a relative of plaintiff, in Poland, who at all times since the transaction has continued to reside at the address originally furnished to defendant, it appeared that the marks were never delivered although nearly a year and a half had elapsed from the time of the pur-

Municipal Court of New York, May, 1921.    [Vol. 115.

chase of the " cable transfer " and saving clauses in the agreement on which defendant seeks to escape or limit its liabilities have not the effect claimed for them, plaintiff is entitled to judgment for the full amount demanded.    (Pp. 389–392.)

ACTION to recover for amount paid for cable transfer to Poland.

Krakower & Peters (Charles C. Peters, of counsel), for plaintiff.

Hanlon & DeLacy (Daniel E. Hanlon, of counsel), for defendant.

BLAU, J.    Plaintiff seeks the recovery of $305 paid to the defendant in September, 1919, for a cable transfer of 7,000 marks to a relative in Poland.

The printed form used by defendant in the instant transaction, gives the name and address of the person in whose favor the transfer was to be effected and the name of the purchaser.

Whatever difference of opinion or rulings may formerly have existed with reference to cable transfers it now seems definitely settled that the term " cable transfer " precludes the idea that an actual transfer of money is contemplated or intended by the parties thereto.    The seller of the cable transfer — in this case, the defendant — is in the position of having sold at an agreed price a credit for a sum of money payable at the place indicated in the written memorandum or contract; and the buyer — the plaintiff here — has purchased a credit for such sum available at the place and for the payee named.

Upon making payment for the cable transfer the plaintiff completed the transfer so far as he was concerned; and the money paid became at once the property of the defendant as the seller of the transfer. But the defendant was left under obligation to the

plaintiff to pay the agreed equivalent in foreign exchange of the amount received by it to the payee named in the cable transfer. *Oshinsky* v. *Taylor,* 172 N. Y. Supp. 231; *Strohmeyer* v. *Guaranty Trust Co.,* 172 App. Div. 16.

Despite a letter from defendant to plaintiff, dated January 19, 1920, four months after the transaction in question, which reported the " execution " of the cable transfer on the authority of defendant's Polish correspondent, it appears clearly from the testimony that the payee never received the 7,000 marks, although nearly a year and a half have elapsed from the time plaintiff purchased his cable transfer. On this point there is no dispute. It is, however, claimed on behalf of the defendant that while some form of liability is assertable against it, the measure of that liability must be limited to a return to plaintiff of 7,000 Polish marks, being the credit purchased, or the equivalent thereof in our currency at the time of demand made by him for a refund of his money.

Two reasons are assigned for this contention: *First.* That the defendant was without fault since it cabled the agreed transfer abroad promptly and correctly to its correspondent in Warsaw for transmission to the designated payee; and the non-payment thereof was due to no act of omission or commission of its own but to a subsequent mutilation of or error in the cabled message with which defendant cannot be charged. *Second.* That by the written terms of the transaction the defendant's liability in case of nonpayment of the credit purchased, was limited to the current market value of the exchange in this city at the time of the claimed refund.

Both of these grounds are urged by defendant because of the conditions stamped or printed on the cable transfer here under consideration. Those provisions declare:

Municipal Court of New York, May, 1921. [Vol. 115.

" In making cable transfers it is fully understood and agreed that no liability shall attach to us nor our correspondents for any loss or damage in consequence of any delay or mistake in transmitting the message or for any cause beyond our control.

" Exchange will be purchased promptly to cover this remittance and payment therefor is only accepted upon the following conditions: *If payment for any reason cannot be effected,* the Irving National Bank will not be liable for any sum in excess of the current market value in New York at the time the refund is made."

These saving clauses in the agreement, obviously inserted for the defendant's benefit and protection, cannot cover or protect the defendant in the instant transaction. The marks were *never* delivered; and a fair interpretation of the former of the two provisions just quoted must limit its operation to those cases in which through delay, error or any other cause beyond defendant's immediate control, payment has either been delayed or made in an erroneous amount, and loss has thereby been sustained. To give any other effect to the quoted language would mean that the defendant, regardless of the non-payment of the money or of the failure of the payee to receive any part of the remittance intended for him, could claim complete freedom from liability on the ground that it had in the first instance sent a cable in correct form to its foreign correspondent, and thereby absolved itself from all further responsibility. Merely to state this conclusion is to show the untenable character of the claim.

Nor does the second of the quoted provisions help the defendant. The language provides for a limitation of liability " if payment for any reason *cannot* be effected." Here, however, payment *could* have

been effected at all times subsequent to plaintiff's purchase of the cable transfer. The payee then resided and at all times since the transaction has continued to reside at the address originally furnished to defendant. It is true that internal conditions in Poland, as testified to at length on the trial, go to prove that a longer time · than the usual or normal period is required to effect cable transfers or credit transmissions; but this has relevancy only as to what constitutes a reasonable time for the execution of the transaction here sued upon. While this testimony may justify a delay, it cannot justify or excuse nonpayment of the money and thereby sanction its retention without accountability to plaintiff. The only purpose which this evidence serves, is to justify a finding that a delay of between thirty or forty days in completing or executing the cable order would have been excusable; but there is nothing to sanction a delay of between fifteen and eighteen months.

Furthermore, this case does not present the question of liability for a loss arising out of a *belated* or *delayed* transmission or payment as in *Strohmeyer* v. *Guaranty Trust Company, supra.* Here the record shows the *failure* to pay or effect payment at any time although more than fifteen months have elapsed since the transaction. Neither do the facts in the case at bar disclose an affirmative assumption of and for all errors, delays and losses arising out of acts or omissions of telegraph and cable companies, correspondents, and agencies of the defendant as in the unreported case of *Sommer* v. *Taylor* cited in defendant's brief. The form of the agreement in this last mentioned case was such that the trial court felt constrained to rule the plaintiff *precluded* from holding defendant responsible for the loss arising from the failure to make payment of the purchased credit.

Municipal Court of New York, May, 1921. [Vol. 115.

The facts in the case at bar are quite different. Defendant not having paid the money to the payee nor having returned it to the plaintiff after demand — and for the purposes of determining the rights of the parties, the institution of this action must be held equivalent to a demand — is *prima facie* in default. The saving clauses in the agreement on which it seeks to escape or to limit its liability have not the effect claimed for them; and judgment must accordingly go for the full amount demanded in favor of plaintiff.

Judgment for plaintiff.