BORIS N. SOKOLOFF, Appellant. *v.* THE NATIONAL CITY BANK OF NEW YORK, Respondent.

First Department, April 4, 1924.

**Banks and banking — action to recover balance of deposit in defendant's Petrograd branch bank made by defendant in plaintiff's favor — that assets of said bank have been taken over by Russian government is no defense — plaintiff has claim against defendant separate and distinct from defendant's claim against Russian government.**

In an action by a citizen and subject of Russia to recover the balance of a deposit in the defendant's Petrograd branch bank made by the defendant in plaintiff's favor, wherein it is alleged that the plaintiff in June, 1917, paid to the defendant a certain sum in consideration of an agreement on defendant's part to open in its Petrograd branch bank a deposit account in plaintiff's favor for an equivalent amount in rubles and that said account was opened and a portion of the rubles withdrawn but that defendant failed to honor demands for withdrawals of the balance, it is no defense that the assets of said branch bank have been taken over by the Russian government.

The plaintiff has a claim as a creditor of the defendant bank separate and distinct from the claim of the defendant against the Russian government.

APPEAL by the plaintiff, Boris N. Sokoloff, from an order of the Supreme Court, made at the New York Special Term and entered

in the office of the clerk of the county of New York on the 2d day of February, 1923, denying his motion to strike out the first and second separate defenses contained in the amended answer.

*Morris Hillquit,* for the appellant.

*Shearman & Sterling* [*John A. Garver* of counsel; *Carl A. Mead* with him on the brief], for the respondent.

Finch, J.:

The complaint alleges that in June, 1917, the plaintiff paid to the defendant $30,225 in consideration of an agreement on defendant's part to open in its Petrograd branch bank a deposit account in plaintiff's favor for an equivalent amount in rubles; that said account was opened and a portion of the rubles withdrawn, but that the defendant failed to honor demands for withdrawals of the balance, for which balance the plaintiff demands judgment.

For a first defense the answer alleges that the defendant opened a branch in Petrograd, Russia, in January, 1917; that before doing any business in Russia it had to obtain the permission of the Russian government, and to agree to certain rules, which provided, among other things, that litigations in connection with defendant's operations in Russia must be had in Russian courts of law, and otherwise be subject to the Russian laws and decisions of the Russian government; that in March, 1917, a revolution took place in Russia, followed by a second revolution in November, 1917, which latter resulted in the establishment of a government known as the Russian Socialist Federated Soviet Republic, which thereafter and now exercises the sole sovereign governmental authority therein; that in and after November, 1917, said Soviet government decreed the nationalization of various forms of property, including that of all the private or joint stock banks operating in Russia, merged the same into a State bank, which took over all the assets and liabilities of the liquidated enterprises, acting for the Soviet government, and to said State bank was intrusted the temporary administration of the affairs of the private banks so taken over. Said defense further alleges that the Soviet government took possession of defendant's branch bank in Petrograd and of all its assets, and liabilities, including its liability to the plaintiff, by force of arms, and has refused to return the same; that plaintiff was a citizen and subject of Russia and as such bound to respect the acts of its government; that at the time of making the agreement in question plaintiff was aware of the unsettled political condition in Russia and it was intended by the parties that the agreement should be performed in Russia and be governed by its laws and the orders or decrees of any government therein. The defense further alleges that the

means of performance contemplated by the parties were destroyed by the aforesaid acts of the Soviet government.

The same facts are alleged as a second and partial defense.

The difficulty with the contention urged by the defendant that the defense is valid, is two-fold: *First,* that when the plaintiff executed its contract with the defendant, the well-recognized relationship between a depositor and a bank arose, namely, that the bank became simply a debtor of the plaintiff, without plaintiff having a right to claim any specific property belonging to the bank. When the bank had difficulties with the Russian government, there arose an independent claim between the bank and the Russian government. There was, however, no specific *res* belonging to the plaintiff to which the doctrine of frustration could apply. As was said by Mr. Justice FIELD in *Williams* v. *Bruffy* (96 U. S. 176, 187), which was a case where a resident of Pennsylvania sued a resident of Virginia in *assumpsit* for goods sold and delivered and the defendant pleaded that he was forced to pay the amount of the indebtedness under a decree of the Confederate States government confiscating all claims of citizens of the Union against citizens of the Confederate States: " But debts not being tangible things subject to physical seizure and removal, the debtors cannot claim release from liability to their creditors by reason of the coerced payment of equivalent sums to an unlawful combination."

Both parties urge that this confiscation by the Soviet government was justifiable on the ground of a war tax. The respondent maintains that the tax was a tax against the plaintiff as a resident of Russia and was a confiscation of the account, which was owed to the plaintiff. The appellant, on the other hand, contends that there was an appropriation of the entire money of the defendant in Russia as a war tax. The fact that the plaintiff has a claim as a creditor of the National City Bank separate and distinct from the claim of the defendant as against the Russian government is more clearly seen, however, if we assume that instead of the war tax being the confiscation of 100 per cent of the assets of the defendant bank, the Soviet government had placed a tax of 75 per cent upon the assets of the defendant bank, in which case the defendant could not urge this tax in diminution of its debt to the plaintiff. As regards the claim of the plaintiff, the defendant bank is in no different position than would be a private person who alleged in defense to a suit for money loaned, that he was robbed of the money which he had accumulated to pay the debt while he was carrying it from the bank to his creditor.

A second objection to the defense is that while a defense of impossibility is recognized where the parties enter into a contract

First Department, April, 1924.                    [Vol. 208

upon the assumption that a particular thing essential to its performance will continue to exist and be available for the purpose and neither party agrees to be responsible if it is not so available, the contract must be subjected to an implied condition that if before the time of performance, without fault of either party, the thing ceases to exist or be available, the contract shall be dissolved and the parties excused from performance. This defense, however, only goes so far as to excuse the performance of an executory contract. It has never been held available for the purpose of unjustly enriching one party at the expense of the other. (*Tabak* v. *Fettner*, 139 App. Div. 248.) The utmost that the defendant can urge is that it be relieved from the performance of its agreement in so far as the agreement has been rendered impossible of performance, but on no principle can it be urged that the defendant became relieved from the obligation of repayment of the amount received when through no fault on the part of the plaintiff it was unable to complete the contract. If the defense were pleaded as an excuse to an action for damages for failure further to perform the contract, a different question would arise, but here the defendant is seeking to excuse itself not from further performance of the contract, but from payment of a debt owing the plaintiff arising from the receipt of money from the plaintiff for a specific purpose which the defendant is unable to carry out, and hence there arises an obligation to repay the plaintiff.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to strike out the complete and partial defense granted, with ten dollars costs.

DOWLING, MERRELL, McAVOY and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.